1
2
3
4
5
<u>6</u>
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONTE ROLANDO HARRIS,<br><br>          Plaintiff,<br><br>     v.<br><br>H.A. RIOS, et al.,<br><br>          Defendants. | Case No.  1:09-cv-00781-MJS (PC)<br><br>**MEMORANDUM OF DECISION; JUDGMENT FOR DEFENDANTS COBB AND ZARAGOZA**<br><br>**CLERK TO TERMINATE ALL PENDING MOTIONS AND CLOSE CASE** |

## I.      BACKGROUND

Plaintiff, a federal prisoner proceeding *pro se*,  brought this civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). The action proceeded to trial on August 20, 2015, on Plaintiff's First Amendment claim against Defendants Gonzaga, Cobb, Zaragoza, and Valero for delay in delivery of incoming seized mail; a First Amendment claim against Defendant Cobb for interception and seizure of outgoing mail; and a Fifth Amendment due process claim against Defendants Estrada, Cobb, Valero, and Zaragoza for failing to provide notice that mail was seized.

The Court has subject matter jurisdiction over the case under 28 U.S.C. §§ 1331 and 1343(a)(3). Venue in the Eastern District of California is proper under 28 U.S.C. § 1391 because the events giving rise to the action occurred in this district.

All parties consented to the jurisdiction of a Magistrate Judge for all purposes in accordance with 28 U.S.C. § 636(b)(1)(B).  Neither party having demanded a jury, the case was tried by the undersigned without a jury.

## II.     UNDISPUTED FACTS

The parties stipulated to the following facts:

1.   Plaintiff was incarcerated at the United States Penitentiary in Atwater, California ("USP Atwater") at all times relevant to his complaint.

2.   Defendants were employed by the Bureau of Prisons at USP Atwater at all times relevant.

3.   During Plaintiff's incarceration at USP Atwater, he was the subject of an investigation involving his use of false liens, checks, and other  fraudulent financial instruments.

4.   Plaintiff alleges that his mail was seized as set forth in detail in Section IV, below.[1]

## III.    DISPUTED FACTS

The following facts remained disputed at the time of trial:

1.   Whether the mail items at issue were contraband relating to Plaintiff's alleged use of false liens, checks, and other fraudulent financial instruments.

2.   Whether Plaintiff received notice the items were confiscated.

3.   Whether any individual Defendant violated Plaintiff's rights under the First or Fifth Amendment.

---

[1] Plaintiff's second amended complaint also alleged a First Amendment claim for seizure of his outgoing mail in October 2010. However, because this alleged seizure was not attributed to any identifiable defendant, the claim was dismissed. Plaintiff did, however, successfully allege a Fifth Amendment claim for failure to notify him of the seizure of mail in that month.

2

4. Whether Defendants reasonably could have believed their actions were legal in light of clearly established law and the information they possessed at the time.

5. If a Defendant did deprive Plaintiff of a right under the First of Fifth Amendment, whether such conduct was malicious, oppressive, or in reckless disregard of Plaintiff's rights.

6. Whether Plaintiff suffered any compensable damages.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff claims that the following specific items of his mail were seized on or about the dates indicated and were seized by the Defendants whose names are stated and that the Defendants indicated failed to give him notice of the seizure.

1. November 7, 2007 -- Incoming Express Mail --

   A. Item number EB21 5054 867US **and**

   B.  Item number EB73 4930 888US

   were seized by Defendants Gonzaga and Cobb;

2. May 25, 2008 --  Outgoing Priority Mail envelope— (No reference number was provided initially, but the evidence leaves it clear this was outgoing mail Item number 0300 1290 002 7041 4939) was seized by Defendant Cobb. Defendant Cobb failed to give notice of the seizure;

3. April 2009 -- Incoming Priority Mail – Item number 2008 1140 0000 6011 6651 was seized by Defendant Zaragoza.  Defendant Estrada failed to give notice of the seizure;

4. May 16, 2010 -- Incoming Certified Mail – Item number 7008 1140 0000 8015 3898 was seized by Defendant Valero.  Defendant Valero failed to give notice of the seizure; and

3

5.  July 26, 2010 – Incoming Certified Mail – Item Number 7010 0780 0001 8760 1388 was seized by Defendant Valero. Defendants Zaragoza and Valero failed to give notice of the seizure.

These are the only items that Plaintiff claims in this case were improperly seized and notice of seizure not given.

## V.  APPLICABLE LAW

### A.  <u>Bivens</u> Actions

Under <u>Bivens</u>, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. <u>See</u> <u>Bivens</u>, 403 U.S. at 397. A Plaintiff bringing a <u>Bivens</u> action must demonstrate "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 683 (2009). Respondeat superior liability is inapplicable to <u>Bivens</u> actions. <u>Id</u>.

### B.  First Amendment

Prisoners have "a First Amendment right to send and receive mail." <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). However, there must be a "delicate balance" between prisoners' First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison.  <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407-408 (1989).

A prison may adopt regulations or practices for incoming mail which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987); <u>Thornburgh</u>, 490 U.S. at 413. "[T]here is . . . no doubt that prison officials are justified in discovering and refusing to process mail" that contains "escape plans, contraband, threats, or evidence of illegal activity." <u>Smith v. Delo</u>, 995 F.2d 827, 830 (8th Cir. 1993). Prison officials have a responsibility to forward mail to inmates promptly. <u>Bryan v. Werner</u>, 516 F.2d 233, 238 (3d Cir. 1975). Allegations that mail

delivery was delayed for an inordinate amount of time are sufficient to state a claim for violation of the First Amendment. Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996). However, a temporary delay or isolated incident of delay does not violate a prisoner's First Amendment rights. Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (temporary delay resulting from security inspections does not violate First Amendment).

Because outgoing correspondence from prisoners does not generally pose a serious threat to internal prison order and security, there must be a closer fit between any regulation or practice affecting such correspondence and the purpose it purports to serve. Thornburgh, 490 U.S. at 411-12. Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413 (1974), overturned on other grounds by Thornburgh, 490 U.S. at 413-14.

## C.    Fifth Amendment

An inmate has a "due process liberty interest in receiving notice that his incoming mail is being withheld by prison authorities." Frost v. Symington, 197 F.3d 348, 353-54 (9th Cir. 1999). Thus, withholding delivery of inmate mail must be accompanied by minimum procedural safeguards. Procunier, 416 U.S. at 417-18, overruled on other grounds by Thornburgh, 490 U.S. at 413-14. These procedural safeguards include: (1) notifying the inmate that the mail was seized; (2) allowing the inmate a reasonable opportunity to protest the decision; and (3) referring any complaints to a prison official other than the one who seized the mail. Procunier, 416 U.S. at 418-19; Krug v. Lutz, 329 F.3d 692, 698 (9th Cir. 2003).

## D.    Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Resolving a claim of qualified immunity requires courts to determine whether the facts alleged, when taken in the light most favorable to the plaintiff, violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson, 555 U.S. at 244. Therefore, "[i]f the [defendant's] mistake as to what the law requires is reasonable . . . the [defendant] is entitled to the immunity defense." Saucier, 533 U.S. at 205. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

### E.    Punitive Damages

Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence. Ninth Circuit Model Civil Jury Instructions § 5.5 (2008). The trier of fact must find that Defendant's conduct was "motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1986). Acts or omissions which are malicious, wanton, or oppressive support an award of punitive damages. Dang v. Cross, 422 F.3d 800, 807-08 (9th Cir. 2005).

## VI.   TRIAL

### A.  Plaintiff's Claims and Evidence[2]

Plaintiff called himself as his only witness. He testified essentially as follows:

---

[2] The Court invited Plaintiff to describe in his opening statement all the evidence he believed supported his case. He did so. When actually presenting his case in chief, he touched on the same matters, but in less detail. In order to give this *pro se* Plaintiff the benefit of every doubt, the Court considers all claims presented by Plaintiff at trial as if in evidence but only to the extent discussed below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 All six of the items listed in Section IV, above, were confiscated without justification or authority and in only one of those six cases was he given notice of the confiscation and in no case was the confiscated mail delivered to him or returned to its sender as called for by applicable provisions of the Federal Bureau of Prison Program Statement Mail Management Manual. Other mail was confiscated as reflected in the trial exhibits filed by Defendants, but according to Plaintiff, none of those items are the subject of his claim or otherwise at issue in this case and none of the exhibits relating to them is relevant to his claims in this case.

Specifically, as to **Items 1.A**.[3] and **1.B**., Plaintiff refers to Exhibits P-2 and P-3 as proof of delivery of the items to the prison. Plaintiff had been advised by family members that the items had been mailed to him Express Mail, but he never received them. Accordingly, his mother, Nadine Manley, instigated the U.S. Postal Service tracking system and, in response, the Postal Service produced Exhibit P-2, indicating delivery to an unknown signatory at the prison. Plaintiff asserts he was not given copies of P-2 or P-3 except in this litigation. Plaintiff believes Defendants Gonzaga and Cobb were responsible for the seizures.

Plaintiff contends that he sent out **Item 2** on or about May 25, 2008, by Priority Mail, but it was never received by the addressee or returned to Plaintiff. Exhibit P-5 appears to be a June 30, 2008 request by Plaintiff for confirmation of delivery of item number 0300 1290 002 7041 4939. A typed note at the bottom under "DISPOSITION" states that the item was not in the mail room, but it was with the Special Investigative Service ("SIS"). In Exhibit D-C, Plaintiff on May 30, 2008, accuses Defendant Zaragoza of improperly turning over his mail to the FBI; it is not clear that this accusation relates to Item 2, but its date suggests as much. Yet, Plaintiff claims that Defendant Cobb seized the mail and failed to give notice of the seizure.

---

[3] For simplicity's sake, the Court will generally refer to the six items of allegedly wrongfully confiscated mail only by the number and, if applicable, letter designation used by the Court in Section IV above.

Plaintiff acknowledges that he did receive notice of confiscation of **Item 3**, but asserts that the mail was never delivered nor returned to him, Plaintiff believes Defendant Zaragoza improperly seized the mail, but Defendant Estrada failed to give notice of the seizure. (It is noted that Exhibit D-F identifies confiscated mail by the same Priority Mail number Plaintiff associates with Item 3.  It describes the items seized as "A certified letter, UCC paperwork, Bank statement".   However, the Exhibit indicates the items were seized March 17, 2009, and Plaintiff was given notice of seizure on April 9, 2009.) The defense acknowledges that this item was confiscated.

As to **Item 4,** Plaintiff claims it was never received by him. He inquired about its whereabouts on May 16, 2010 and July 26, 2010 and was told by the mailroom "They took it." The last page of Exhibit D-M corroborates that information (although the dates do not jibe). Plaintiff believes it was confiscated by Defendant Valero, and he failed to give notice of his seizure. According to Plaintiff, Exhibit P-1 reflects his inquiry as to the whereabouts of Item 4 and also the following item.

Plaintiff's August 15, 2010 request (Exhibit P-1) to Defendant Zaragoza, indicating he had been told "you have my mail", supports his claim that **Item 5** was seized by Defendants Valero and that Valero and Defendant Zaragoza failed to give notice. The last page of Exhibit D-M seems to reflect that this item was in fact confiscated. At trial, Plaintiff acknowledged that he did in fact receive that item but it was damaged to the point its text was illegible.

Plaintiff claims his actual damages consist of the wasted expenditure of fees to express mail items that were confiscated and the cost of obtaining Secretary of State Certifications on some documents. Specifically, he claims that seven never-received documents had been certified by the Secretary of State in Maryland at a cost of $35.00 each. He also lost the benefit of the $34.00 he paid to have confiscated items express mailed and $20.00 for having items certified. He claims he forfeited the benefit of

$50.00 he paid to open a bank account that he was never able to use because Defendant's confiscated the forms necessary to open and/or maintain the account.

**B. Defendants' FRCP 52(c) Motions**

At the conclusion of Plaintiff's case, Defendants moved under FRCP 52(c) for judgment in favor of Defendants Jesse Estrada, Alicia Gonzaga and Jesus Valero. In arguing the motion, Plaintiff conceded the lack of evidence against Estrada and Gonzaga.

Plaintiff having presented no evidence upon which to base a claim that either Defendant Estrada or Gonzaga personally participated in confiscation of his mail or failed to give notice of a confiscation when they had a duty to do so, the motion was granted as to them. **Defendants Estrada and Gonzaga were dismissed from the action**. The case proceeded as to Defendants Jesus Valero and Lieutenants Cobb and Zaragoza.

**C. Defendants' Claims and Evidence**

Defendants maintain that the documents confiscated—two packages—contained contraband, namely information and materials to aid or enable others to file or capitalize on fraudulent liens against third parties. They maintain that they always gave Plaintiff notice of confiscation as required. They deny that other items Plaintiff alleges were confiscated were taken or held by any named Defendant or with the knowledge of any Defendant except as described below.

Defendants first called Plaintiff as a witness for the Defense.  Examination of Plaintiff established that his only evidence relating to Defendant Valero was Exhibit P-7 which bears that Defendant's name and apparent signature on a confiscation form. However, Plaintiff testified, and the written discovery corroborated, that Exhibit P-7 necessarily related to Defendants' confiscation of items identified in Exhibits D-A through D-X,  all of which are considered contraband and none of which are the subject of Plaintiff's claims in this suit. Defendants thus renewed the FRCP 52(c) motion as to

Defendant Valero.  After further argument and review of the evidence the Court granted the motion on the ground that Plaintiff had presented no evidence that Defendant Valero had personally participated in any confiscation of any items which are the subject of Plaintiff claims in this suit or in failing to give Plaintiff notice of such a confiscation. **Defendant Valero was dismissed**.

Further, on examination by defense counsel, Plaintiff admitted that Exhibit D-F established that Plaintiff was in fact on April 3, 2009, given notice of the confiscation from the mail of Item 3, described as a "certified letter, UCC paperwork, Bank statement."

The Defense had Plaintiff identify Exhibit D-E, an undated letter from Plaintiff to SIS Officer Cobb requesting return of Plaintiff's property but doing so in terms and style commonly used by "Sovereign Nation" adherents to threaten or attempt to assert and file fraudulent liens against others.  *See United States v. Getzschman*, 81 Fed. Appx. 619, 620 (8th Cir. 2003) (explaining how adherents to the "redemption" theory use the UCC "to create fictitious 'Treasury Direct Accounts' in the United States Treasury Department"); *see also Justice v. Superior Court of San Diego Cnty.*, 2003 U.S. Dist. LEXIS 28945, *5-8 (S.D. Cal. July 18, 2003) (explaining legal jargon and tactics commonly used by Sovereign citizens). Defendant similarly had Plaintiff identify other such documents at D-N which appear to the Court to reflect attempts by Plaintiff to assert billion and million dollar liens against the Judge, Assistant U.S. Attorneys and others involved in the criminal trial which resulted in his conviction and prison sentence. Plaintiff admitted attempting to send Exhibit N through the mail while at USP Atwater.

Plaintiff also admitted that by June 5, 2008, he received notice (Exhibit P-5) that Item 2 had been confiscated and was with SIS and that it contained: "INTERNATIONAL TREATY OF PEACE TO THE WORLD; INTERNATIONAL SECURITY AGREEMENT; COMMERCIAL SECURITY AGREEMENT" as reflected in Exhibit D-E.

Exhibit D-P is an undated letter from Plaintiff to another appearing to give instruction for similar lien activity. Exhibit D-X is a letter from Plaintiff seeking help in selling a $12 million lien against Citibank; it includes related documents prepared and mailed by Plaintiff while incarcerated at USP Atwater.

The evidence reflecting Plaintiff's apparent attempts to engage in fraudulent activity while at USP Atwater was admitted over Plaintiff's relevancy objection. First, it did tend to establish, and Plaintiff does not dispute, that Items 2 and 3 did in fact constitute contraband. Otherwise, it was admitted only to the extent it might be said to justify Defendants' active inspection and confiscation of Plaintiff's mail if and as relevant to this action. The Court draws no inference therefrom as to the content of Items 1.A., 1.B., 4 or 5.  The evidence is such that the Court makes its findings and renders its decision without regard to the content of these latter items.

Defendant Lt. Cobb was sworn and testified essentially as follows:  He was the SIS Lieutenant at USP Atwater from 2007 until the end of 2010. He did not confiscate any of Plaintiff's mail referred to in Exhibits P-2 (Items 1A and 1B) and has no reason to believe such mail was confiscated. As to Exhibit P-3 (Item 2), he knows the subject package was in the SIS office, but he does not know who put it there. Exhibit D-P (Plaintiff's letter with lien filing instructions) was in the package (Item 2) which was in SIS in May or June 2008. It is, in the witness' opinion, contraband because it is instructing someone how to file fraudulent liens, and it is evidence of a possible crime. The witness never seized anything of Plaintiff's that was not contraband and never seized anything without giving Plaintiff notice.

Defendant Lieutenant Joel Zaragoza was sworn and testified essentially as follows:  He was an SIS Lieutenant at USP Atwater from 2009 to 2012. He completed parts of Exhibit D-F, the Confiscation Form which refers to Item 3 and describes the items confiscated as "Certified letter, UCC paperwork, Bank statement." Exhibit D-N (purported liens against the Judge and AUSAs in Plaintiff's criminal case) was among

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the documents confiscated and referred to in Exhibit D-F. Zaragoza never seized any of Plaintiff's mail that was not contraband and never seized any mail without giving notice to Plaintiff.

### D.  Rebuttal By Plaintiff

Plaintiff responded in essence by arguing his case as well as he, a lay person without legal training, could.  His argument was difficult to follow, but as best the Court could determine, Plaintiff's claims, supported by evidence, are the following:

1.   Plaintiff in written discovery requested copies of all mail confiscated from him and all notices of confiscation Defendants prepared for him. Defendants responded with Exhibit P-7 and Exhibits D-A through D-X. None of these documents relate in any way to Items 1.A, 1.B, 4 or 5, items which were confiscated without notice being given to Plaintiff.

2. The documents in Items 1.A, 1.B, 4 and 5 have never been delivered to Plaintiff or to the intended recipient or sender (if other than Plaintiff).

3. Defendant Cobb's liability for at least one of the confiscations without notice is established by the fact that Cobb was an SIS Lieutenant at the time, he knew of the confiscation (he told Plaintiff someone from the mail room had brought the item to the SIS office), and he did not attribute the confiscation to anyone else.

4.   Zaragoza gave Plaintiff a confiscation notice regarding Item 2.

## VII.   ANALYSIS

Plaintiff testified, without contradiction, that Items 1.A, 1.B, 4, and 5, express or certified mail addressed to Plaintiff in November 2007, May 2010, and July 26, 2010, never reached Plaintiff even though it appears to have been delivered to USP Atwater where Plaintiff was then housed. This fact, plus the fact the prison was indeed concerned about Plaintiff's use of the mails for illicit activity is sufficient to support a conclusion that the items were indeed confiscated. Plaintiff also credibly maintained

that he never received notice Items 1.A, 1.B or 4 had been seized and, that those items were not returned to their senders. Item 5 ultimately was delivered to Plaintiff but in damaged condition. Item 2 was confiscated but Plaintiff was given notice of its confiscation and he in fact filed an administrative claim regarding its confiscation. It appears to have contained contraband material intended for use in filing fraudulent liens. Item 3 appears also to have been contraband, and Plaintiff was given notice of its seizure.

Based on the foregoing, the Court concludes that the weight of the evidence shows that Items 1.A, 1.B, and 4 were seized without proper notice to Plaintiff and without ever forwarding the Items to Plaintiff or returning them to the sender. Such action/inaction could be said to violate Plaintiff's rights under the Due Process Clause of the Fifth Amendment as set forth above. (To the extent that Plaintiff claims such acts and inaction also violated applicable regulations or policies, there is no implied private right to sue civilly for violation of Title 15 of the California Code of Regulations or prison regulations. *See e.g., Vasquez v. Tate*, No. 1:10-cv-1876-JLT (PC), 2012 WL 6738167, at *9 (E.D. Cal. Dec. 28, 2012); *Davis v. Powell*, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012)).

The weight of the evidence also is sufficient to satisfy the Court that Item 5 was seized without notice and ultimately delivered in a damaged condition. There is no evidence the damage was intentional or in any way violated any of Plaintiff's constitutional rights.

Despite evidence that items were confiscated without proper notice and delivery or return, there is no evidence upon which the Court could attribute such acts and failures to act to either of the two remaining Defendants, Zaragoza or Cobb. Plaintiff argues that those Defendants, Lieutenants in the SIS office concerned with Plaintiff's allegedly illicit mail, reasonably should be expected to know of the confiscation of Plaintiff's mail. He also notes that Defendant Cobb actually had a discussion with

13

Plaintiff in which he demonstrated knowledge that Plaintiff's mail was in the SIS office. However, both flatly denied under oath confiscating any non-contraband or failing to give Plaintiff notice of seizure when they were involved in seizing mail. There is no evidence to the contrary. Plaintiff's suspicion, though perhaps reasonable, is not competent evidence and certainly not sufficient to establish by a preponderance of the evidence responsibility for a constitutional violation. Defendants Zaragoza and Cobb are entitled to judgment in their favor.

## VIII.   FINDINGS AND CONCLUSION

Based on the foregoing, the Court makes the following findings:

1. Prison officials confiscated mail Items 1.A, 1.B, and 4 without proper notice to Plaintiff and without forwarding the Items to Plaintiff or returning them to the sender;

2. Prison officials seized mail Item 5 without proper notice and ultimately delivered it to Plaintiff in a damaged condition; there is no evidence the damage was done intentionally or in violation of Plaintiff's constitutional rights;

3. No evidence exists linking Defendants Zaragoza and Cobb to the confiscation of Items 1.A, 1.B, 4, and 5 or the failure to provide notice of confiscation.

Accordingly, IT IS HEREBY ORDERED that:

1. Judgment is entered in favor of Defendants Zaragoza and Cobb and against Plaintiff; and

2. The Clerk of the Court shall terminate all pending motions and close the case.

IT IS SO ORDERED.

Dated:   __December 3, 2015__        /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28